James P. **MITCHELL**, Secretary of Labor, United States Department of Labor, Plaintiff

v.

J. R. **NICHOLSON**, Defendant (three cases).

Civ. A. Nos. 1686, 1687, 1699.

United States District Court W. D. North Carolina, Asheville Division.

Dec. 15, 1959.

Stuart Rothman, Solicitor, Washington, D. C., Beverley R. Worrell, Regional Attorney, F. Marshall Neilson, Attorney, Birmingham, Ala., M. J. Parmenter, Attorney, U. S. Dept. of Labor, Birmingham, Ala., for plaintiff.

Uzzell & DuMont, Asheville, N. C., for defendant.

WARLICK, District Judge.

James P. Mitchell, Secretary, United States Department of Labor, as plaintiff, brings the above actions against the defendant in which he seeks a recovery of unpaid minimum wages and unpaid overtime compensation allegedly due four former employees of the defendant, and to enjoin defendant from failing to pay minimum wages and overtime compensation, and to keep all time and payroll records as is required by the provisions of the Fair Labor Standards Act of 1938, as amended (Title 29 U.S.C.A. § 201 et seq.) Those individuals for whom the actions are instituted are Wade Tesner, Reece Tesner, Willard Sullivan and Joseph Ashe.

Civil Action No. 1686 is that suit in which a recovery is sought for the first three named. Civil Action No. 1699 being a similar action seeking a recovery for Joseph Ashe, and Civil Action 1687 is an action which seeks injunctive relief under applicable provisions of Secs. 15 (a) (2) and 15(a) (5) of the Fair Labor Standards Act.

Two of the actions were instituted on April 30, 1957, a third action was filed on June 10, 1957. Due to the prolonged illness of the defendant, continuances were made necessary and it was not until late August 1959 that the cases were heard.

The answers, generally speaking, set up a general denial of the basic allegations made against the defendant.

The case was heard by the court without a jury as is provided in Rule 52, Federal Rules of Civil Procedure, 28 U.S. C.A., and from the hearing the following findings are made.

*Findings of Fact:*

Each of the four individuals for whose use and benefit the actions were instituted filed a written request with the Secretary of Labor asking that such actions be brought to recover unpaid minimum wages and unpaid overtime compensation due from defendant under the provisions of the Act.

Reece Tesner and Wade Tesner filed their requests with the Secretary while still employed by the defendant; the other two, Sullivan and Ashe, after each had quit his employment.

The defendant J. R. Nicholson, resides in Asheville, Buncombe County, in the Western District of North Carolina, and is now and was at all times during the periods involved, engaged in the transportation by motor vehicle of mail to, from, and between the main post offices, substations, and railway stations in and about Asheville, Oteen, Spruce Pine, North Carolina, and Morristown, Tennessee,—all of which was being performed by him under a written contract made with the United States Post Office Department. The contract obviously had been submitted to bid,—the routes over which the mail was to be transported were fixed, definite and certain; the trains to be met were surely embraced in the contract, and naturally the transportation was on a seven day basis. The defendant, Nicholson, had been engaged in performing this contract and

previous ones over a considerable period of time and was entirely familiar with the work to be done, the way and manner in which it was to be carried out, the normal time for compliance therewith, and generally understood all and every of the incident requirements.

The claimant Wade Tesner was employed by defendant from the week ending March 15, 1956, through the week ending November 15, 1957, for the purpose of loading, driving and unloading the various motor vehicles assigned to him for such purpose, in transporting such United States mails for the defendant under the terms of his contract.

Similarly the defendant employed Reece Tesner for the week ending April 30, 1955, through the week ending November 15, 1957, in doing similar work in the performance of defendant's contract with the Post Office Department.

The defendant, Nicholson, likewise employed Willard Sullivan for a similar purpose for the period from the week ending October 26, 1955, through the week ending December 30, 1956.

Joseph Ashe, one among those for whom this action was instituted, was also employed by defendant during the period from the week ending June 12, 1955, through the week ending July 31, 1956.

There were five routes to be served under the terms of the contract which is required of the defendant, if he would comply therewith; that the mail was to be transported over these five routes on schedule as nearly as possible for a period of a seven day week.

The defendant had others employed for similar duty and who performed a like service but who have not filed any claim for compensation other than that paid such employee.

The schedule for delivery of the mail as set up by the defendant in line with his fulfilling the contract was to the effect that some of his employees would work five days a week, others would work a greater period of time, and some likely would be on duty on occasion during a full seven day period.

The defendant is not an educated man, and came up during the period when records were not so meticulously kept as now required, but is a man of good character and standing in his community.

Much of the time when the matters complained of herein were being done defendant was not physically able to give the affairs his undivided attention, and was compelled to rely upon others, principally his wife, to carry on the incident work involved in his contract.

*Contentions:*

It is the contention of Wade Tesner, one of the four, for whom the actions are instituted, that he worked an average of 54 hours for 32 weeks, and 48 hours for 64 weeks.

Reece Tesner contends that during the entire period of work for the defendant from April 30, 1955, through the week ending November 15, 1957, that he worked 61 hours some weeks, 64 hours on other weeks, and 67 hours on the remaining weeks, which overtime by him aggregates the amount sought as a recovery in his case herein.

Willard Sullivan contends that he worked an average of 48 hours for 41 weeks and an average of 54 hours for 19 weeks.

Joseph Ashe similarly contends that within the period of his employment that he worked 54 hours for one week, an average of 48 hours for three weeks, and from that period of his employment from July 13, 1955, through July 31, 1956, he worked an average of 56 hours per week for 50 weeks, with no overtime compensation.

It is further found as a fact that Wade Tesner during the period of his employment from the week ending March 15, 1956, through January 31, 1957, was paid a semi-monthly salary of $85; that from February 1, 1957, through the week ending November 15, 1957, at which time his services were discontinued, he was paid a weekly wage of $40. That no overtime compensation was paid.

Within the period of his employment Reece Tesner from April 30, 1955,

through January 31, 1957, was paid a salary of $170 a month, payable at $85 every two weeks, and during the period beginning February 1, 1957, to and including November 15, 1957, was paid a weekly salary of $43, with no overtime compensation.

Willard Sullivan within the whole period of his employment was paid a monthly wage of $150.

Joseph Ashe, from June 12, 1955, when employed by defendant to July 12, 1955, was paid $150 a month and during the remainder of his employment from July 12, 1956, to and including July 31, 1956, was paid a salary of $170 which wage was payable semi-monthly.

During the periods involved in this controversy, prior to March 1, 1956, the defendant failed to pay the four employees for whom this action is instituted, at a rate of not less than 75¢ an hour, and at all times thereafter following March 1, 1956, to and including the date of the termination of the employment, failed to pay said employees at a rate of not less than $1 an hour.

It is further found that during the pertinent periods each of the four employees of the defendant worked a longer period than 40 hours in each week without being compensated therefor during each week at a rate of one and one half times the regular rate of employment.

The defendant contended in his answers where a general denial of the allegations was made, and further from the evidence in the trial, of the case, that he had at all times paid compensation to these four and any others employed by him in the performance of his contract with the Post Office Department, the amount of money that each was entitled to, and in particular contended in these actions that his employees herein were working for him on a definite contract of employment,—the terms of which they fully knew, and after each had satisfied himself of the assigned routes, the days on which he would work, and that the routes could be travelled, and the mail accordingly transported, within a period of time in line with the compensation paid under the Wage and Hour Law.

There is a wide difference in the evidence offered and a sharp contrast in its weight.

Unfortunately neither side ordered a report of the evidence made and accordingly I must rely entirely on my meager notes and any independent recollection of the facts developed.

I am convinced that the parties for whom these actions were instituted and the defendant as well were all of the opinion when the contracts of employment were made, that the work to be performed thereunder, taking into consideration those who would perform the services, could be done within a 40 hour week, and that the compensation agreed upon was in line with the existing law. Later on, as the volume of mail to be handled increased and certain mail carrying trains were removed by the railroads, all obviously increased the amount of mail to be handled from the remaining trains, and evidently resulted in unforeseen delays, and prompted conditions which required the employees of the defendant to remain idle a greater portion of their time than theretofore. One thing that can be said for the defendant under all of these circumstances, and as well for his employees, is that they saw to it that the mails went through. Evidently, however, this occasioned a greater waiting period and a larger resulting loss of time. And when there is added to the above changes the normal bad weather conditions in the section of country where the contract was to be performed, it surely made necessary longer hours of work.

It also appears that some of the plaintiffs kept secret records of the hours they worked, but that at no time did any of them ever acquaint the defendant with such records. Even in the face of these records each one signed the payroll sheet indicating the receipt of their pay. It was not until a year or more after their employment began that any of them took any exception to the amount paid for their labor performed.

■ It seems that no provision appears to have been made for compensating defendant's employees for the time spent when they were "on duty" in defendant's service and the evidence is silent as to any pay therefor. However it appears that much of the recovery sought herein stems from the "waiting time" on delayed trains, at Asheville, North Carolina and Morristown, Tennessee, for that the evidence offered clearly indicates that the travel distances required during each day in order to transport the mail could easily have been performed within the 40 hour week. Therefore, in view of the fact that the defendant's employees, while being on duty, could not have otherwise secured employment at such hours, I find that the time spent waiting on trains was compensable under the Act. Skidmore v. Swift & Co., 323 U.S. 134, 137, 65 S.Ct. 161, 89 L.Ed. 124; Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118.

■ Prior to February 1, 1957, the records of the defendant were clearly inadequate to reflect the hours worked under the Act, and at that time his attention was directed to this failure to keep proper records. On such being demanded of him, the defendant evidently undertook to keep a different type of record, but an examination of those offered in evidence indicates that these work sheets on which the hours his employees worked were set down, were inadequate and still fail to clearly reflect what is required of one in maintaining a proper record. It may have been that his effort was honest, but his result was lacking.

Defendant has therefore at all times pertinent, and even at the present time, failed to maintain proper records which show adequately and accurately the hours worked by each employee during each work day, the total hours worked during each work week, and has otherwise failed to comply with the intent and purpose of the Act by maintaining a proper system of records.

On the above facts I conclude:

*Conclusions of Law:*

The Court has jurisdiction of the parties and the subject matter of the action.

That while employed by the defendant those for whom this action was instituted were engaged in commerce within the meaning of the Act.

That during the period of their employment Wade Tesner, Reece Tesner, Willard Sullivan and Joseph Ashe were employed in violation of Sections 6 and 7 of the Act; and as a result thereof are entitled to be further compensated. It has been rather difficult to arrive at an amount which will fully compensate the parties. The records are not complete, the overtime worked is not fully shown, and the evidence is not entirely clear, but as best I can, from all the testimony offered, I make the following awards in full of all compensation to which the parties are entitled.

| | |
|---|---:|
| Wade Tesner | 556.50 |
| Reece Tesner | 1,024.00 |
| Willard Sullivan | 251.75 |
| Joseph Ashe | 188.25 |
| A Total of | $2,020.50 |

Defendant, in failing to make, keep and preserve adequate records reflecting the hours worked by his employees, the wages earned, and other conditions of employment, has violated Section 11 of the Act. And since his violations are continuing, the court finds that they are injurious to his employees and are not in the public interest, and so finding, authorizes the issuance of an injunction against such continued violations.

Submit decree.