James P. MITCHELL, Secretary of Labor,
United States Department of Labor,
Appellant,

v.

Claude H. TURNER and Citizens and
Southern Bank, Trustee, Appellees.

No. 18271.

United States Court of Appeals
Fifth Circuit.

Dec. 27, 1960.

Jacob I. Karro, Atty., Dept. of Labor, Bessie Margolin, Asst. Sol., Dept. of Labor, Washington, D. C., Harold C. Nystrom, Acting Sol. of Labor, United States Department of Labor, Washington, D. C., Beverley R. Worrell, Regional Attorney, Birmingham, Ala., for appellant.

Stanley Meyerson, Atlanta, Ga., Johnson, Hatcher, Meyerson & Irvin, Atlanta, Ga., for appellees.

Before TUTTLE, Chief Judge, and RIVES and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a decision in two consolidated actions brought by the Secretary of Labor under Section 16(c) of the Fair Labor Standards Act, [29 U.S. C.A. § 216(c)], to recover unpaid minimum wages and overtime compensation alleged to be owed by appellees to their employees.

The issue on appeal is whether the appellees could legally exclude from the work day, for purposes of wage computation, two 15-minute periods—one each morning and one each afternoon, during which operations in the plant were suspended. The court below granted sum-

mary judgment for appellees, principally on the ground that "during said rest periods [the employees] did in fact rest and also engaged in activities of their own without restriction by the employer, and further that during such periods they did not render any services or perform any work for the defendants."

■ It has long been settled that an employee's work time under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. is not limited solely to the time he is actively engaged in the performance of work.[1] The test to be applied is whether the "idle time" is "predominantly for the employer's benefit or for the employee's * * *."[2] The court below found there was no genuine issue of fact, and that the 15-minute breaks were predominantly for the benefit of the employees.

The facts, taken in the light most favorable to appellant,[3] are as follows: Appellees manufacture small outboard motor boats. The work done by the employees involved here was monotonous, repetitious, tedious and tiring. The plant was not air-conditioned and, being of corrugated metal, became very hot in summer. The air in the upholstery department was not good and contained considerable dust. Paint fumes in the paint spraying room were very strong and the exhaust fans inadequate. Smoking was prohibited anywhere in the plant. The company tried to confine employee trips to the restroom or drinking fountain to rest periods.

After the breaks, the men testified that they returned to work with renewed energy and made fewer mistakes. In addition, there was expert evidence that a rest period of 15 minutes restored workers to 90% of their pre-fatigue level.

The expert also indicated that generally the introduction of rest periods leads to an appreciable increase in total output and tends to decrease absenteeism, turnover of personnel, and the taking of unauthorized random rests. In the absence of such rest periods, worker efficiency declines at an accelerated rate.

During the breaks, the employees left the plant and congregated on an adjoining field and dead end street. Here, they conversed, played checkers and poker, shot craps, purchased refreshments from a mobile wagon, listened to a preacher, and "scuffled." One employee shot rats in the field adjoining the plant. The great majority of employees lived more than 50 miles from the plant and thus could not go home during the 15-minute breaks.

At the end of the break, a horn sounded and the employees were required to be at their posts when it ceased blowing.

The work breaks were initiated by the employer and were mandatory on the employees. The employees would have preferred "doing away with the breaks altogether" and getting off one-half hour earlier.

■ In addition to this picture of the facts, the Secretary comes armed with a well-established administrative interpretation of the Fair Labor Standards Act which provides that employees must be compensated for work breaks of less than 20 minutes duration.[4] This interpretation is entitled to great, though not conclusive, weight.[5]

■ In view of the facts as stated above, and after giving due consideration to the long-standing administrative ruling, we are of the opinion that the

1. Armour & Company v. Wantock, 1944, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118; Skidmore v. Swift & Co., 1944, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124.

2. Armour & Company v. Wantock, 1944, 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118.

3. See authorities collected in 6 Moore, Federal Practice, 2d ed., Par. 56.15[1].

4. Interpretive Bulletin No. 13, originally issued in 1939, and revised in 1940; see evolution of this interpretation summarized in Mitchell v. Greinetz, 10 Cir., 1956, 235 F.2d 621, 624-625, 61 A.L.R. 2d 956.

5. See Skidmore v. Swift & Co., 1944, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124

**106**

court below erred in ruling, as a matter of law, that the evidence established that the employees were the predominant beneficiaries of the work breaks.

We could stop here, but for the Secretary's insistence not only that this case be reversed, but that the court below be directed to enter summary judgment in his favor. Appellees protest because the Secretary filed no motion for summary judgment in the court below.

It is not necessary for us to align ourselves with the majority or with the minority of the courts which have passed on the question of whether such a counter or cross-motion is necessary.[6] For, when the facts are viewed in the light most favorable to the appellees, the Secretary was not entitled to summary judgment. There was some evidence that the idea of free periods originated with the employees themselves who asked for a free period during the morning and afternoon; that the free periods lasted longer than 15 minutes in most cases; that the employees welcomed a break in the morning when they were hungry and could get something to eat; that the work was not "monotonous or exacting"; that working conditions in the plant were "very pleasant"; and that over-all production suffered as a result of the cessation of plant activities during the 15-minute breaks. On this state of facts, and again giving due weight to the administrative interpretation of the Act, we cannot say that no genuine issue was presented as to whether the 15-minute breaks were predominantly for the benefit of the employer. The entry of summary judgment for either party would have been erroneous, and the cause must be remanded to the district court for further proceedings.

To guide the court below in reaching a proper determination of the issue before it, we note that the fact that the employees made no claim to be paid for the extra time until the administrative authorities arrived on the scene is not a binding waiver. Nor is any understanding between employer and employees that the rest periods were to be non compensable a legal contract. For the obligation of the employer to meet the minimum working conditions prescribed in the Act is statutory and a matter of general public policy, and cannot be waived or contracted away by individual employers and employees.[7]

Reversed and remanded.

---

6. See 6 Moore, Federal Practice, 2d ed., Par. 56.12, at p. 2088 (1953).

7. Cf., Brooklyn Sav. Bank v. O'Neil, 1945, 324 U.S. 697, 707, 65 S.Ct. 895, 89 L. Ed. 1296; Wood v. Meier, 5 Cir., 1955, 218 F.2d 419, 420.