HEIRS OF MARIO MELÉNDEZ, ETC., Plaintiffs, Appellees, and Appellants, *v.* CENTRAL SAN VICENTE, INC., Defendant, Appellant, and Appellee.

Nos. 613, 614.   Decided November 5, 1962.

*Gabriel de la Haba, Rafael Baragaño, Jr., Garrard Harris* for Central San Vicente, Inc. *Angel M. Ciordia* for heirs of Meléndez.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Mario Meléndez rendered services until the very day of his death to Central San Vicente, Inc., an industrial enterprise engaged in the manufacture of sugar for interstate commerce. After his death his heirs filed a complaint claiming extra hours for the period from 1942 to 1957,[1] alleging that the deceased worked 13 hours a day, Monday through Saturday. The hearing having been held, the trial court determined that Meléndez had rendered services to defendant during 539 weeks, and that during the first period of 444 weeks—December 26, 1946 to July 6, 1955—he worked 13 hours a day, and during a second period of 95 weeks—July 7, 1955 to April 27, 1957—his daily period was 12 ½ hours. Judgment was rendered against defendant for the sum of $22,047.88, a like amount as additional compensation, and $4,000 for attorney's fees. This judgment should be modified substantially inasmuch as the trial court committed the errors assigned in the petition for review filed by defendant, which we turn to discuss.

1. As stated above, plaintiff brought the action after the death of employee Meléndez. Pursuant to subd. (c) of

---

[1] In view of the fact that defendant employer commenced to operate the sugar mill on December 26, 1946, it was agreed at the hearing that the claim would cover only the period comprised between that date and April 27, 1957.

§ 32 of Act No. 96 of June 26, 1956, 29 L.P.R.A. § 246d (1961 Supp.), "in the event the employee has ceased in his employment with the employer, the claim shall include only the last ten years immediately preceding the date of his ceasing." [2] In the instant case the action must cover the services rendered between April 27, 1947 and April 27, 1957. The claim for the extra hours worked between December 26, 1946 and April 26 of the following year should therefore be excluded.

2. Briefly stated, the evidence established that during the period covered by the claim Meléndez rendered services as chauffeur to the administrator of the sugar mill; that his main duties consisted in driving the administrator early in the morning from San Juan to the mill situated in Vega Baja, and in the afternoon to drive him back to his home in Santurce; that in order to perform this work he left the mill about 6:00 a.m. and arrived between 8:00 and 8:15 a.m., and on the return trip he left between 5:00 and 5:15 p.m. During the time comprised between 8–8:15 a.m. and 5–5:15 p.m. he had no specific duties to perform, although he remained in the mill subject to call. Thus, on Monday he went to the town of Vega Baja to purchase food for the administration house and this took him about an hour; on Thursday or Friday he made a trip to a local bank or of the neighboring town of Manatí to get the payroll money. Occasionally he made emergency trips to carry persons who were ill or who sustained accidents in the mill and whose cases, because of their seriousness, could not be taken care of in the mill's small hospital. On certain occasions, when there were interruptions in the grinding process, he was asked to give notice to the colonos of the area. After the morning trip he polished and got the car in readiness for any business. He had lunch

---

[2] The same result would be reached if subd. (b), which limits the action when the employee is working with the employer to the wages corresponding to the last ten years immediately preceding the filing date of the complaint, were applicable.

at home, and this took him about an hour.

He did not punch a time card. He was under the direct orders of the administrator. Meléndez actually remained in the mill awaiting Mr. Comas' orders. Although this witness made a great effort to explain the testimony given before an investigator of the State Insurance Fund to the effect that after driving him to work in the morning Meléndez "remained on call, he remained at my disposal," in an attempt to limit the scope of his testimony to the particular day in which Meléndez lost his life, we are satisfied that the entire picture of the evidence introduced shows that these were the usual working conditions.

The trial court made findings of fact similar to those stated, but it disregarded elements of the evidence for plaintiffs which must be taken into consideration in the decision of the case. It is well to point out that the evidence offered by complainants was somewhat vague and inaccurate on the aspect of the work performed by the predecessor during the time comprised between the administrator's trips, but that nonetheless the inferences which may be drawn appear in the summary made in the preceding paragraphs.

The evidence shows that the services rendered by Meléndez which we have described were limited to the dead season, during five days a week, Monday through Friday, because the administrator rarely went to the mill on Saturday. During the grinding season the administrator remained at the mill during the whole week and it was not therefore necessary to make the daily trips in question. This being so, the claim for all the periods corresponding to the grinding season should be eliminated and the cause of action limited to the extra hours worked during the dead season.[3]

---

[3] There is no problem of prescription, since the rendering of the services by complainants' predecessor was continuous, except that the extra hours were worked during specific periods, the dead season. There should be no confusion either with the employees of seasonal industries. *Rodríguez* v. *Eastern Sugar Associates*, 82 P.R.R. 563 (1961); *Piñán* v. *Maya-*

The nature of the services rendered by Meléndez makes it necessary to consider the aspect of the waiting time and its effect in connection with the claim for extra hours worked in excess of the legal period.

■■ The definitions contained in the act concerning working period in Puerto Rico, No. 379 of May 15, 1948, § 19; 29 L.P.R.A. § 288, shed very little light on the matter under consideration. It merely states that "'Labor contract' means every oral or written agreement by which the employee binds himself to execute a work, perform labor, or render a service for the employer for a wage or any other pecuniary remuneration." Mandatory Decree No. 3, 29 R.&R.P.R. §§ 245n-21 to 35, covering the sugar industry in its agricultural as well as industrial phase, does not contain any specific provision which may be of help.[4] However, it is not discussed formally that the work of an employee is not limited only to the exertion of great physical or mental effort, but that under certain circumstances an employer may engage an employee to do nothing but simply to await some occurrence which may call for his activity, either of his own initiative or at the employer's request. *Armour & Co.* v. *Wantock*, 323 U.S. 126 (1944), and *Skidmore* v. *Swift & Co.*, 323 U.S. 134 (1944) are the leading cases on this question and around which the doctrine to determine when the waiting time is part of the working period has been elaborated. In a clever pun of words which loses part of its flavor upon being translated into Spanish, it was said in *Skidmore* that "Facts may show that the employee was engaged to wait,

*güez Sugar Co.*, 84 P.R.R. 86 (1961); *cf. Agostini* v. *Superior Court; P.R. Lighterage, Int.*, 82 P.R.R. 213 (1961).

[4] In other decrees promulgated by the Minimum Wage Board there is incorporated a definition of "work" or "labor" to the effect that "it includes, besides service or task, *any waiting time* required or permitted by the employer." See § 1 of the Decrees No. 11 (construction industry), 12 (transportation service), 13 (laundry and dry cleaning), 14 (furniture and other wood products), and 15 (quarries), 29 R.&R.P.R. §§ 245n-171, 191, 211, 231, and 251.

or they may show that he waited to be engaged" (at 137). Although no steadfast rule can be established for determining when the waiting is compensable and we must consider the circumstances of each case as a whole, it may be asserted that the solution depends to a great extent on: (1) the degree of freedom to engage in personal activities which an employee enjoys during the inactive period in which he is subject to be called to render services; (2) the number of consecutive hours during which the employee is subject to be called; (3) the benefit which the waiting represents to the employer or to his business. *Skidmore v. Swift*, 323 U.S. 134 (1944); *Armour & Co. v. Wantock*, 323 U.S. 126 (1944); *Mitchell v. Taylor*, 286 F.2d 104 (C.A. 5, 1960); *Handler v. Thrasher*, 191 F.2d 120 (C.A. 10, 1951); *Skelly Oil Co. v. Jackson*, 148 P.2d 182 (Okla. 1944); *Mitchell v. Nicholson*, 179 F. Supp. 292 (W.D. N.C. 1959); *Campbell v. Jones & Laughlin Steel Corporation*, 70 F. Supp. 996 (W.D. Pa. 1947); *Travis v. Ray*, 41 F. Supp. 6 (W.D. Ky. 1941); *Walling v. Bank of Waynesboro, Ga.*, 61 F. Supp. 384 (S.D. Ga. 1945); *Thompson v. Daugherty*, 40 F. Supp. 279 (Md. 1941); *Mitchell v. Wigger*, 39 Labor Cases ¶ 66278 (1960);[5] Annotation, *What is considered as working time within contemplation of overtime provisions of Federal Fair Labor Standards Act*, 89 L. Ed. 130 (1945); 33 Va. L. Rev. 58–60 (1947).[6]

The federal rules promulgated by the Administrator of the Wage-Hour Act, 29 C.F.R. §§ 785.14–785.17 (1949 ed., 1962 Supp.), sum up the applicable principles in consonance

---

[5] This case does not involve any problem concerning the Portal-to-Portal Act, 61 Stat. 84, 29 U.S.C. §§ 251–262. See D'AMICO, *"Working Time" and the Portal to Portal Act of 1947*, 9 Fed. B. J. 375 (1948); *Fair Labor Standards Under the Portal to Portal Act*, 15 U. Chi. L. Rev. 352 (1948).

[6] For other problems touching the matter under consideration, see Annotations, *"Rest period, 'coffee break', or similar idle time as work time or as hours worked, within Fair Labor Standards Act,"* 61 A.L.R.2d 962 (1958), and *"Sleeping time as work time or as hours worked, within Fair Labor Standards Act,"* 44 A.L.R.2d 870 (1955).

with the interpretation of the courts, and after laying down the general rule that the waiting time forms or not part of the working period, depending on the circumstances of each particular case, they provide:

"§ 785.15  On duty.

"A stenographer who reads a book while waiting for dictation, a messenger who works a crossword puzzle while awaiting assignments, fireman who plays checkers while waiting for alarms and a factory worker who talks to his fellow employees while waiting for machinery to be repaired are all working during their periods of inactivity.  The rule also applies to employees who work away from the plant.  For example, a repair man is working while he waits for his employer's customer to get the premises in readiness.  The time is worktime even though the employee is allowed to leave the premises or the job site during such periods of inactivity.  The periods during which these occur are unpredictable.  They are usually of short duration.  In either event the employee is unable to use the time effectively for his own purposes.  It belongs to and is controlled by the employer.  In all of these cases waiting is an integral part of the job.  The employee is engaged to wait.  [Citations.]

"§ 785.16  Off duty.

"(a) *General.*  Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked.  He is not completely relieved from duty and cannot use the time effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived.  Whether the time is long enough to enable him to use the time effectively for his own purposes depends upon all of the facts and circumstances of the case.

"(b) *Truck drivers; specific examples.*  A truck driver who has to wait at or near the job site for goods to be loaded is working during the loading period.  If the driver reaches his destination and while awaiting the return trip is required to take care of his employer's property, he is also working while waiting.  In both cases the employee is engaged to wait.  Waiting is an integral part of the job.  On the other hand, for

example, if the truck driver is sent from Washington, D.C., to New York City, leaving at 6 a.m. and arriving at 12 noon, and is completely and specifically relieved from all duty until 6 p.m. when he again goes on duty for the return trip, the idle time is not working time. He is waiting to be engaged. [Citations.]

"§ 785.17   On-call time.

"An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call.' An employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call." [Citations.]

■ Applying the above factors to the facts of the present case, we are constrained to admit that the employee's waiting period was due principally to the purposes and objects of the employer and for his benefit; that the employee was available, subject to be called at any time to render services; that he could not enjoy for personal purposes the time during which he was not actively engaged in rendering services; and, briefly, that the waiting was part of his working period.

The five hours a day worked in excess of the legal period during five days a week during the dead season are therefore compensable.

■ 3. According to the holding in *Laborde* v. *Eastern Sugar Associates*, 81 P.R.R. 468 (1959), the hours worked in excess of eight hours a day should be compensated at double time, and in order to determine the hourly rate the weekly salary must be divided by 40 hours. This is so because according to the holding in that case it is necessary to apply the most favorable aspects of the federal legislation —work period of 40 hours a week—and the state regulation —double time—pursuant to subd. B-2(*a*) of Mandatory Decree No. 3, 29 R.&R.P.R. § 245n–28(a). In this aspect it is well to state that the evidence has convinced us that plain-

tiffs' predecessor received a fixed weekly salary which changed at different times, and that the hours worked and which were shown in the extract of the payrolls admitted in evidence do not reflect adequately the work contract agreed upon between the parties as respects the question of compensation.[7] This conviction disposes of the only error assigned by the heirs-complainants in their petition for review.

The judgment rendered by the Superior Court, Bayamón Part, on October 2, 1961, will be modified in accordance with the terms of this opinion. The sum allowed for attorney's fees will be reduced to $1,000. As thus modified, it will be affirmed.

---

[7] Even though the evidence shows that on certain occasions the employee worked on Sunday, his day of rest, this aspect of the claim should be disregarded because the number of times was not established, and also by the application of the "*de minimis*" rule. *Anderson* v. *Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1945); *Bridgeman* v. *Ford, Bacon & Davis*, 161 F.2d 962, 965 (C.C.A. 8, 1947).