William E. **BROCK**, Secretary of Labor, United States Department of Labor, Plaintiffs,

v.

The **CLARIDGE HOTEL AND CASINO**, Defendant.

Civ. A. No. 84–4336.

United States District Court, D. New Jersey.

Sept. 19, 1986.

Supplemental Opinion May 8, 1987.

U.S. Dept. of Labor by George R. Salem, Deputy Sol. of Labor, Patricia M. Rodenhausen, Regional Sol., Percy S. Miller, New York City, for plaintiffs.

Spengler, Carlson, Gubar, Brodsky & Frischling, by Adin C. Goldberg, Donald G. Davis, New York City and Charles J. Hanlon, Jr., Atlantic City, N.J., for defendant.

## OPINION

COHEN, Senior District Judge:

Plaintiff, William E. Brock, the Secretary of the United States Department of Labor, filed a complaint in this action on October 17, 1984 alleging that the defendant, The Claridge Hotel and Casino, violated the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA or Act") by failing to pay proper overtime compensation to three classes of its supervisory employees—Boxpersons, Floorpersons, and Pit Bosses to be defined *infra.* Plaintiff seeks a permanent injunction against defendant's alleged violations of the FLSA's overtime provisions, the payment of monies representing overtime compensation due to defendant's supervisory employees, and liquidated damages in an amount equal to the back pay allegedly owing. The case was tried before this Court on August 5, 6, and 7, 1986. After considering all the evidence, arguments of counsel, and submissions, the following shall constitute our findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.

## FINDINGS OF FACT

Plaintiff, William E. Brock, is the current duly appointed Secretary of Labor, United States Department of Labor, and is charged with the duties, responsibilities, and authority vested in him by the provisions of the FLSA.

Defendant, The Claridge Hotel and Casino, is a limited partnership, organized under the laws of the State of New Jersey, with its principal place of business in Atlantic City, New Jersey. Defendant operates a hotel and gaming casino licensed by The New Jersey Casino Control Commission, at which the public engages in a variety of games of chance. Such games include blackjack, roulette, baccarat, slot machines and craps. The dealer, the generic term for the employee who operates these games, is a non-supervisory employee who has the most direct contact with the gambling public. He accepts the bets, conducts the game, and enforces its rules.

There are different categories of supervisory employees above the dealer, among them, Boxpersons, Floorpersons and Pit Bosses. A Boxperson is the first level of supervisor at a craps table, observing and supervising the play at one craps table, at which three dealers work. A Floorperson, whose responsibilities include supervising the play at a number of gaming tables, is the second level of supervisor at a craps game, and the first level of supervisor at the other games. A Pit Boss is responsible for a specified area of the casino, known as the pit, where he supervises the dealers, Boxpersons, and Floorpersons. He is the third level of supervisor for craps, and the second level of supervisor for the other games. When an individual becomes either a Boxperson, Floorperson, or Pit Boss, he does not necessarily work exclusively in that given classification. Often a supervisor will also work as a dealer or in more than one supervisory capacity.

From October 1, 1981 to the present, when a Boxperson, Floorperson, or Pit Boss, is scheduled for a tour of duty, he is required to report to his station approximately fifteen minutes prior to the start of the scheduled shift for the purpose of preparing for the commencement of the "action." His time in attendance is recorded using two different measures. Each of the above-mentioned supervisory personnel is required, upon arrival and departure, to sign a sheet at his work station, recording thereon his time of arrival and departure. In addition thereto, Boxpersons and Floorpersons are required to punch a computerized clock when they start and finish their tours of duty. The employee inserts his identification card into a computer when he begins and ends a shift, and the computer automatically reads and records his working hours. This procedure is known as "badging in" and "badging out." Defendant, during slow work periods, employs a procedure entitled the "Early Out" program which is designed to reduce its scheduled supervisory work force. Prior to or during their tour of duty, the supervisory employees are invited to sign an "early out" sheet, thereby requesting to leave work early if business should slow down.

If defendant does become overstaffed at some point during a shift, the signatories to the "early out" list are asked, in the order in which they signed the list, whether they would like to leave early. If they answer in the affirmative, they are permitted to leave before the scheduled end of the shift. Should defendant seek to reduce its supervisory staff, but there are insufficient names on the "early out" list for a given shift, the non-signatories are asked whether they would like to leave early. If defendant does not enlist a sufficient number of "volunteers," some of the supervisory employees are assigned to different tasks for the remainder of the shift.

The defendant established a so-called "two-tiered" compensation plan for its Boxpersons, Floorpersons, and Pit Bosses. According to defendant, the supervisory employee under this plan is guaranteed a base salary of $250.00 for any week in which he performed any service, plus potential earnings in excess of that amount depending on the number of hours worked. At the time an individual is hired as a Boxperson, Floorperson, or Pit Boss he is required to sign a form entitled "Weekly Salary Guarantee." It provides as follows:

> In consideration of the fact that you are employed in a supervisory capacity, you will be guaranteed a weekly salary of $250.00 for any week in which you perform any service. Absence from work due to jury duty, court appearance or military leave will not affect this guarantee.
>
> If your absence is due to an accident or illness, you will be covered under our sick leave and disability plans, and therefore this guarantee does not apply.
>
> Please indicate your receipt of this memorandum by signing in the space provided.

By design, the $250.00 guarantee comes into play only in the rare instance where an employee is not scheduled for a sufficient number of shifts, or is not permitted by defendant to work a sufficient number of hours, to earn $250.00. If an employee in a given week is scheduled for enough shifts to earn $250.00, but voluntarily absents

himself from work, the guarantee does not come into effect. Where a supervisor is scheduled for at least $250.00 of work hours, but is absent for either a full day or a partial day because of an accident, illness, personal reason, or otherwise voluntarily, the guarantee does not apply. Absenting oneself pursuant to the "Early Out" program, is considered by defendant to be a voluntary absence.[1] If a supervisory employee does choose to leave early pursuant to the "Early Out" program, or leaves a shift early for illness or a personal reason, he signs his departure time on the sign-in sheet and, except for Pit Bosses, "badges out".

The rate of pay for a supervisory employee is designated by defendant as an X amount per eight-hour day. It is neither overtly designated as an hourly rate, nor a weekly rate. If an individual works more than eight hours in a given day, he is paid the daily rate plus a pro rata share of the additional time. If an individual works less than eight hours in a given day, he is paid a pro rata share less than the daily rate.[2]

The payroll department regularly receives reports on the hours worked by the aforesaid supervisory employees. It calculates their earnings by multiplying the number of hours of actual work by an hourly amount derived from dividing the applicable daily rate by eight. Earnings are calculated for periods as small as one-half hour. The Boxpersons, Floorpersons, and Pit Bosses regularly work over 40 hours in a given week, but never receive time and one-half pay for the hours in excess of 40. These employees understood, at time of hire, that they would not be receiving time and one-half for hours worked over forty in a workweek.

An investigation by the Wage and Hour Division of the Department of Labor revealed that between July, 1981 and January, 1983 there were approximately 305 instances where an individual employed as a Floorperson, Boxperson, or Pit Boss was paid less than $250.00 in a week in which he worked in a supervisory capacity. The investigation did not seek to determine whether a supervisory employee made less than $250.00 in a given week because of a voluntary absence. Further, the investigation did not seek to determine whether a supervisor who made less than $250.00 in a given week as compensation for his supervisory work earned additional monies as a dealer or other non-supervisory work such that his total compensation for a given week exceeded $250.00. Defendant contends that its audit uncovered only 11 instances since July, 1981 where a supervisory employee earned less than $250.00 in a workweek in which he performed supervisory tasks, and should have been compensated pursuant to the Weekly Salary Guarantee, but was not.[3] Such instances were admittedly due to defendant's error in deducting voluntary partial day absences.

The defendant, through its officers and officials, was aware that the provisions of the Fair Labor Standards Act applied to its operation. It intended that individuals, employed as Boxpersons, Floorpersons, and Pit Bosses, not be compensated for their supervisory work at time and one-half for hours of work in excess of forty in a week. Defendant at no time sought an opinion, oral or written, from the Wage and Hour Administrator or from the Secretary of Labor that its method of compensating Boxpersons, Floorpersons, and Pit Bosses complied with the provisions of the Fair Labor Standards Act. Further, defendant never

1. It is significant to note that the employees did not understand the "Weekly Salary Guarantee", and its application.

2. For example, if a Floorperson whose rate of pay is $160.00 for an eight-hour day (which calculates to $20.00 per hour) works a full eight hours, he is paid $160.00. If, however, he works 9½ hours, he receives the daily rate of $160.00, plus 1½ hours at $20.00 per hour (which calculates to $30.00). His total compensation for that day would be $190.00. If, the

Floorperson worked only 6 hours, he would receive the daily rate of $160.00, minus 2 hours at $20.00 per hour (which calculates to $40.00). His total compensation for that day would be $120.00. The same results could be achieved by simply multiplying the number of hours worked by the hourly rate of pay.

3. Our review of the evidence reveals that defendant's audit uncovered 12 such instances.

received a written opinion from the Wage and Hour Administrator or The Secretary of Labor commenting on the compensation plan for said supervisors.

## CONCLUSIONS OF LAW

We have jurisdiction over the subject matter in this action, pursuant to § 16(c) and § 17 of the FLSA, 29 U.S.C. § 216(c) and § 217. Defendant is an employer within the meaning of § 3(d) of the FLSA, 29 U.S.C. § 203(d), and is therefore subject to The Act's strictures. Section 7(a)(1) of The Act provides in relevant part:

No employer shall employ any of his employee ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). The Act explicitly exempts from coverage of the overtime provisions an individual employed in a "bona fide ... executive capacity as such terms are defined and delineated from time to time by regulations of the Secretary." § 13(a)(1) of the FLSA, 29 U.S.C. § 213(a)(1). The regulation which defines the term "Executive" states:

The term "employee employed in a bona fide executive * * * capacity" in section 13(a)(1) of the Act shall mean any employee:

(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department of subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and provision or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: Provided, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20–percent interest in the enterprise in which he is employed; and

(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week (or $130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities: Provided, that an employee who is compensated on a salary basis at a rate of not less than $250 per week (or $200 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands or American Samoa), exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or if a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.

29 C.F.R. § 541.1.

It is uncontested that defendant does not pay its Boxpersons, Floorpersons, and Pit Bosses time and one-half for hours worked in excess of forty in a given workweek. Defendant contends, however, that these employees are exempt from such overtime requirements because they are bona fide executive employees as defined by 29 C.F.R. § 541.1, and are therefore exempt pursuant to 29 U.S.C. § 213(a)(1). Plaintiff contends that defendant's Boxpersons, Floorpersons, and Pit Bosses are not bona

fide executives as defined by 29 C.F.R. § 541.1, and are therefore required to be compensated at time and one-half for hours worked in excess of 40 hours. The sole foundation for this conclusion is plaintiff's assessment that said supervisory employees are not compensated for their services on a salary basis as required by 29 C.F.R. § 541.1(f).

■ The issue squarely before us is whether Boxpersons, Floorpersons, and Pit Bosses of The Claridge Hotel and Casino are compensated on a salary basis, or on some other basis, namely an hourly basis. Just as dressing a mannequin up in a skirt and blouse does not transform it into a woman, so too masquerading an hourly employee's compensation as a guaranteed salary plus hour-based bonuses does not transform the compensation scheme into a salary-based plan. We conclude that despite defendant's designation of the supervisory employees' compensation in terms of X amount per 8 hour day, it is nothing more than an hourly wage. Further, the $250.00 Weekly Salary Guarantee is nothing more than an illusion. Boxpersons, Floorpersons, and Pit Bosses are not compensated on a salaried basis.

■ These three categories of supervisory employees had their earnings designated as X amount per 8 hour day. However, with the exception of only 12 instances,[4] their compensation was calculated by 1) dividing the daily rate by 8, thereby producing an hourly rate and 2) multiplying the hours worked by the hourly rate. These employees were paid for all hours worked, and they were not paid for hours scheduled but not worked. Although defendant claims that these supervisory employees receive a weekly minimum salary guarantee of $250.00, thus rendering the compensation scheme within the meaning of 29 C.F.R. § 541.118(b) (minimum guarantee plus extras), we conclude that this alleged salary base does not constitute a salary within the meaning of the regulations.

4. These are the 12 instances, uncovered by defendant after the Department of Labor's investigation, where the defendant found the employ-

Section 541.118 of the Wage and Hour regulations defines "salary basis." It states:

(a) An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a *predetermined amount* constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. (emphasis added.)

29 C.F.R. § 541.118(a). Deductions from the predetermined compensation may not be made for absences occasioned by defendant or the operating requirements of its business, 29 C.F.R. § 541.118(a)(1), but deductions may be made when the employee *absents himself from work for a day or more for personal reasons, sickness*, or *disability*. 29 C.F.R. § 541.118(a)(2) and (3).

There were a number of instances where an employee made less than $250.00 in a given week because of voluntary partial day absences, but did not receive the guaranteed salary amount. This clearly is violative of 29 C.F.R. § 541.118(a)(2). Further, we conclude that an employee's early departure pursuant to the "early out" program is not a voluntary absence, but is occasioned by defendant and its lack of sufficient business. As such, hours absent pursuant to the "early out" program are not properly deductible from the "predetermined compensation." *See* 29 C.F.R. § 541.118(a)(1). Even if such "early out" absences were considered voluntary, they would not be deductible because they would be considered voluntary partial day absences. *See* 29 C.F.R. § 541.118(a)(2). Because we find that defendant made a

ees were due a sum of money pursuant to the Weekly Salary Guarantee.

number of improper deductions from the guaranteed salary, and because it did not have a mechanism to ensure that the guarantee was provided to those eligible supervisory employees, we conclude that the Weekly Salary Guarantee did not constitute a salary basis within the meaning of 29 C.F.R. § 541.118. We can only determine that the Weekly Salary Guarantee was merely a way to attempt compliance with the FLSA while circumventing the "time and one-half" overtime provisions. Although defendant maintains that it consistently adhered to the $250.00 guarantee, we observe that most of its supervisory employees earned more than that amount merely because they were highly paid hourly employees.

Plaintiff met its burden of demonstrating that defendant's compensation plan for its Boxpersons, Floorpersons, and Pit Bosses was not on a salary basis. Accordingly, said employees cannot be considered bona fide executives within the meaning of 29 U.S.C. § 213(a)(1). Compensation for these employees, over 40 hours per workweek, therefore, must comply with the overtime provision set forth in section 7(a)(1) of The Act, 29 U.S.C. 207(a)(1). We shall, pursuant to § 17 of The Act, 29 U.S.C. § 217, enjoin defendant from further violating § 7(a)(1) of The Act.

■ Section 6(a) of the Portal-to-Portal Act, 29 U.S.C. § 255(a) specifies that the statute of limitations to enforce a cause of action under FLSA is two years, "except that a ... willful violation may be commenced within three years after the cause of action accrued." The Third Circuit in *Brock v. Richland Shoe Co.*, 799 F.2d 80 (3d Cir.1986), recently defined an employer's "willful" violation of the FLSA, for purposes of § 6(a) of the Portal-to-Portal Act. It stated that "a violation of the relevant sections of the FLSA is willful if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *Id.* at 81. We cannot conclude that defendant's violation of the FLSA was willful, therefore, the two year statute of limitations is applicable. Defendant, thus, shall be en-

joined from withholding overtime compensation due its supervisory employees from two years prior to the filing of this action, October 17, 1982, through to the present. *See Hodgson v. Wheaton Glass Co.*, 446 F.2d 527, 534–35 (3d Cir.1971). We are unable to specify an exact amount of overtime compensation due because plaintiff's exhibits, specifically Exhibit 38, the summary of unpaid overtime wages, included in its calculations workweeks prior to October 17, 1982. We shall not, however, assess liquidated damages against defendant because we believe that it's violation "was in good faith and [it] had reasonable grounds for believing that [its] act or omission was not a violation of The Fair Labor Standards Act." 29 U.S.C. § 260.

Counsel for the plaintiff shall submit an appropriate order in conformity with the foregoing opinion, including therein its calculation of the amount of overtime compensation owing subsequent to October 17, 1982.

## SUPPLEMENTAL OPINION

This case instituted by plaintiff, William E. Brock, Secretary of the United States Department of Labor, against defendant, The Claridge Hotel and Casino ("Claridge") alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") was tried before the Court on August 5, 6 and 7, 1986. We issued an opinion on September 19, 1986, in which we found that defendant had violated the FLSA by failing to pay proper overtime compensation to certain supervisory employees. We did not issue an Order of judgment at that time, since plaintiff's summary of unpaid overtime wages included workweeks prior to October 17, 1982, and we held that due to the statute of limitations defendant was only liable for unpaid overtime accruing *after* that date. Accordingly, we directed plaintiff to submit an appropriate order, including therein its calculation of overtime compensation owing subsequent to October 17, 1982.

On February 11, 1987, after various delays, plaintiff submitted such an order to the Court. Defendant then requested the

opportunity to object to that Order, and thereafter set out its objections in a letter of March 27, 1987. Plaintiff submitted a written response to the Court dated April 14, 1987, and defendant thereafter filed a reply, dated April 27, 1987. The essence of defendant's objection is that plaintiff's calculation of overtime hours erroneously includes the employees' break time in the total number of hours worked.

Plaintiff urges that defendant's correspondence to the Court articulating this objection is an improper attempt to amend the Court's decision. Motions to amend findings of the court in a non-jury case are governed by Fed.R.Civ.P. 52(b), which provides that such motions are to be made 10 days after the entry of judgment; no judgment has been entered here, so this situation is not precisely covered by that Rule. *Cf. Calculators Hawaii, Inc. v. Brandt, Inc.*, 724 F.2d 1332, 1335 (9th Cir.1983) (holding that a party can make a Rule 52(b) motion at any time after an opinion is filed but before judgment is entered). Even though defendant has not made a formal motion, plaintiff has still been given the opportunity to respond. Moreover, Local Rule 22 of the District of New Jersey envisions a procedure wherein, when a prevailing party is directed to submit an order to the Court, the opposing party may object and the dispute is then to be resolved by the Court. There is nothing in Rule 22 to suggest that an objection such as the one raised here must be made by a formal motion. Here, the parties have had ample opportunity to state their positions in written statements to the Court, and we will therefore address the merits of this dispute.

We note that the issue of whether break time is compensable was not raised at trial and therefore was not addressed, either implicitly or explicitly, in our prior opinion. Had this issue been raised at trial, testimony could have been adduced on such relevant issues as how the break schedule was created, and whether it was proposed by the defendant or its employees. In the absence of such testimony, we draw logical inferences from the evidence presented.

Defendant contends that the break time of the Boxpersons, Floorpersons and Pit Bosses, who are the focus of this case, should not be included in the total compensable time worked under the FLSA. The evidence at trial established that these employees received breaks every hour and a half or two hours. The breaks lasted between 20 and 30 minutes in the case of Boxpersons and Floorpersons, and between 30 and 45 minutes in the case of Pit Bosses. The employees did not sign in and out when they took breaks, and they were free to spend their breaks doing whatever they chose, as long as they did not leave the casino. We assume that they could not leave the premises because circumstances might be such as to compel their immediate return to their posts. Occasionally, they had to spend their breaks doing paperwork, but they normally spent this time sitting in the employee cafeteria, playing pinball, or just relaxing. They were paid for their break time just as for their time on duty. Defendant includes break time in reporting these employees' hours worked to the New Jersey Casino Gaming Commission. Paul Burst, defendant's executive vice-president of operations, testified that break time is computed as part of total experience time reported to the Commission for the purpose of upgrading the licenses of these employees. He also testified that casinos commonly compensate their employees for break time.

The amount of overtime compensation owed under the FLSA depends on the number of hours worked each week. "Work" is not defined in the statute, but it is established that compensable time worked is not limited to the time an employee is actively performing his or her job duties. *Mitchell v. Turner*, 286 F.2d 104, 105 (5th Cir.1960). The burden is on the plaintiff to prove that the breaks are compensable. *Blain v. General Electric Co.*, 371 F.Supp. 857 (W.D.Ky.1971).

The determination of whether any "idle time" is compensable hinges on a close examination of the subject employment setting by the trier of fact. *See Mitchell v. Turner, supra.* The cases in this area

articulate several tests, and the law is not completely consistent in following any of these.

■ Several courts have stated that the test of whether idle time is compensable is whether such time is provided primarily for the benefit of the employer or the employee. *See Mitchell v. Turner, supra; Jackson v. Airways Parking Corp.*, 297 F.Supp. 1366, 1380 (N.D.Ga.1969). While it certainly cannot be denied that breaks are most welcome and relaxing to an employee, here Burst, an executive for defendant, testified that these breaks were primarily provided to increase the workers' efficiency. Defendant's management recognized that the job of supervising gambling activities on the casino floor required intense concentration, and that in order for the employees to maintain this concentration they needed frequent breaks. Certainly an employer would be unlikely to give so much paid break time unless it was deemed necessary. Moreover, these breaks were not optional. The employees were required to be at the casino for the entire length of their shifts, and should be compensated at the prescribed statutory rate for this time spent for their employer's benefit.

The parties direct our attention to certain guidelines promulgated by the Department of Labor which interpret the FLSA and have been relied on by other courts. We note that administrative determinations by an agency are entitled to great weight and should be followed by the court where they are reasonable. *State of New Jersey v. Dept. of Health and Human Services*, 670 F.2d 1262 (3d Cir.1981).

Defendant relies on 29 C.F.R. § 785.16, which deals with "Off Duty" time, and provides:

(a) General. Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked. He is not completely relieved from duty and cannot use the time effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived. Whether the time is long enough to enable him to use the time effectively for his own purposes depends upon all of the facts and circumstances of the case.

Defendant urges that the subject employees were completely relieved from their duties during the breaks, and that the breaks are not compensable time. However, the employees were not completely free to use this time for their own purposes, since they were not allowed to leave the premises. *See Jackson v. Airways Parking Co., supra; Clark v. Atlanta Newspapers, Inc.*, 366 F.Supp. 886, 892 (N.D.Ga.1973) (noting that time was not compensable when worker could completely leave the premises). Other cases in which time is held not compensable, because the employees are free to use the time for personal activities, deal with much longer periods of idle time, lasting for hours rather than the thirty minutes involved here. *See Rousseau v. Teledyne Movible Offshore, Inc.*, 805 F.2d 1245 (5th Cir.1986), *reh'g denied*, 812 F.2d 971 (5th Cir.1987).

Defendant asserts, in the alternative, that all or some of the breaks were bona fide meal periods, which are not compensable. 29 C.F.R. § 385.19 provides:

(a) Bona fide meal periods. Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

. . . . .

(b) Where no permission to leave premises. It is not necessary that an employee be permitted to leave the premises if he

is otherwise completely freed from duties during the meal period.

Plaintiff responds that the breaks were not "for the purpose of eating a regularly scheduled meal," *Blain, supra* at 862, since no one would eat so many meals in a day. The breaks were "rest periods," plaintiff contends, which are governed by 29 C.F.R. § 785.18:

> Rest periods of short duration, running from 5 minutes to about 20 minutes are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time.

While we agree with plaintiff that not all of these breaks can logically be considered meal periods, we must consider that under the regulations a regular lunch break is *not* compensable. The employees in this case worked full days, and presumably did utilize at least one break as a lunch or other meal time. Most of the cases involving bona fide meal periods involve a single, clearly identified break in the day. *See Hill v. United States,* 751 F.2d 810, 814 (6th Cir.1985), *cert. denied,* 474 U.S. 817, 106 S.Ct. 63, 88 L.Ed.2d 51 *reh'g denied,* 474 U.S. 1014, 106 S.Ct. 547, 88 L.Ed.2d 476 (1985). This case is unusual in that it involves so many breaks during the workday. After a careful review of the positions urged by both sides, we find that thirty minutes of the total break time received by each employee in each workday is not compensable time, but will be considered a bona fide meal period. Thirty minutes was the average break time here, and is the amount of time cited in the regulation to constitute a meal period. The cases and regulations under the FLSA do not compel an employer to include a daily meal period in the total compensable time worked. The remaining break time, however, should be included in the total number of compensable hours as rest time, 29 C.F.R. § 785.18. The primary purpose of these breaks was to maintain worker productivity, and the fact that employees may have used them to eat does not convert them into bona fide meal periods; under 29 C.F.R. § 785.19 snack or coffee breaks are not bona fide meal periods.

In accordance with this opinion, plaintiff is directed to submit a revised order, subtracting 30 minutes from each working day for each employee. This order shall be submitted within ten days of the filing of this opinion. Due to the already protracted nature of this matter, no extensions of this time will be granted.

■ The order submitted by plaintiff on February 11, 1987 included a provision awarding pre-judgment interest, said interest to be computed at the adjusted prime rate provided by 26 U.S.C. §§ 6621 and 6622. It also included a provision for post-judgment interest if the payment is not tendered within thirty days, such interest to be calculated at the applicable post-judgment rate established by 28 U.S.C. § 1961(a). According to the recent Third Circuit opinion in *William E. Brock, Secretary of Labor v. Homer Alan Richardson, d/b/a Richardson Construction,* 812 F.2d 121 (3d Cir.1987), pre-judgment and post-judgment interest are to be awarded in an action for back pay under the FLSA unless the equities require otherwise. At 127. In this case we do not find any circumstances which warrant the denial of this interest. Defendant has not objected to these provisions in the proposed order, even though plaintiff called our attention to *Richardson* by sending us a copy of the decision along with an explanatory letter. *Richardson* further provides that the District Court must utilize its discretion to determine the appropriate interest rates, and we find that the statutory guidelines suggested by plaintiff in the proposed order are fair in this case, and have been used by other courts in similar cases. *See, e.g., EEOC v. County of Erie,* 751 F.2d 79, 82 (2nd Cir. 1984). Accordingly, plaintiff's revised order should include these interest provisions.