Sucesión de Mario Meléndez, etc., demandantes, recurridos y recurrentes, *v.* Central San Vicente, Inc., demandada, recurrente y recurrida.

*Números:* 613, 614    *Resueltos:* 5 de noviembre de 1962

*Gabriel de la Haba, Rafael Baragaño, Jr., Garrard Harris* abogados de la Central San Vicente, Inc.; *Ángel M. Ciordia,* abogado de la Sucesión Meléndez.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Mario Meléndez prestó servicios hasta la fecha misma de su deceso a Central San Vicente, Inc., una empresa industrial dedicada a la elaboración de azúcar para el comercio interestatal. Después de ocurrido su fallecimiento, los miembros de la sucesión instaron una querella en reclamación de horas extras por el período comprendido entre 1942 y 1957[1] en la cual se alegó que dicho causante trabajaba trece horas diarias, de lunes a sábado. Después de celebrada la vista oral, el tribunal de instancia determinó que Meléndez había prestado servicios a la querellada durante 539 semanas, y que durante el primer período de 444 semanas —26 de diciembre de 1946 a 6 de julio de 1955— trabajó trece horas diarias, y durante un segundo período de 95 semanas —7 de julio de 1955 a 27 de abril de 1957—su jornada diaria había sido de doce horas y media. Se dictó sentencia contra la parte demandada por la suma de $22,047.88, una cantidad

---

[1] Debido a que el patrono demandado comenzó a operar la factoría azucarera en 26 de diciembre de 1946, en el acto de la vista la reclamación se contrajo al período comprendido entre dicha fecha y el 27 de abril de 1957.

igual por concepto de compensación adicional, y $4,000 para honorarios de abogado. Esta sentencia debe modificarse en forma sustancial por haber incurrido el tribunal a quo en los errores señalados en la petición de revisión presentada por la querellada, que pasamos a discutir. ■

1—Según hemos expuesto precedentemente, la parte actora instó la acción después del fallecimiento del empleado Meléndez. Conforme al inciso (c) de la sección 32 de la Ley Núm. 96 de 26 de junio de 1956, 29 L.P.R.A. (Supl. 1961) sec. 246d, "en el caso de que el empleado hubiere cesado en su empleo con el patrono, la reclamación solamente incluirá los últimos diez años anteriores a la fecha de su cesantía."[2] En el presente caso la acción tiene que contraerse a los servicios prestados entre el 27 de abril de 1947 y el 27 de abril de 1957. Debe, pues, excluirse la reclamación por las horas extras trabajadas entre el 26 de diciembre de 1946 y el 26 de abril del siguiente año.

2—Brevemente expuesto, la prueba estableció que durante el período cubierto por la reclamación Meléndez prestó servicios como chófer del administrador del ingenio azucarero; que sus obligaciones principales consistían en trasladarse a San Juan temprano en la mañana para conducir al administrador hasta la factoría sita en Vega Baja, y por las tardes, conducirle de regreso al hogar de éste en Santurce; que para realizar esta labor salía de la central alrededor de las 6:00 A.M. y llegaba entre 8:00 y 9:15 A.M., y en el viaje de regreso, salía entre 5:00 y 5:15 P.M. En el intervalo comprendido entre las 8:00–8:15 A.M. y las 5:00–5:15 P.M. no tenía obligaciones específicas que cumplir, aunque permanecía en la central disponible para cualquier misión que se le encomendara. Así, los lunes se dirigía al pueblo de Vega Baja a comprar comestibles para la casa de

---

[2] Igual resultado se obtendría si fuera aplicable el inciso (b) que limita la acción cuando el empleado estuviere trabajando con el patrono a los salarios correspondientes a los últimos diez años anteriores a la fecha de la interposición de la querella.

la administración, tomándole estas gestiones un promedio de una hora; los jueves o viernes realizaba un viaje a un banco de la localidad o del pueblo limítrofe de Manatí para buscar el importe de la nómina semanal. Ocasionalmente hacía viajes de emergencia para trasladar personas enfermas o que sufrían accidentes en la factoría, y cuyos casos, por la gravedad de los mismos, no podían ser atendidos en el hospitalillo de la central. En algunas ocasiones, cuando había interrupciones en el proceso de la molienda, se le encomendaba dar aviso a los colonos del área. Después del viaje de la mañana, limpiaba y preparaba el automóvil y lo tenía disponible para cualquier gestión. Almorzaba en su hogar, para lo cual tomaba alrededor de una hora.

No marcaba tarjeta de asistencia al trabajo. Estaba bajo las órdenes inmediatas del administrador. En realidad, Meléndez permanecía en la central en espera de las órdenes del señor Comas. Aunque este testigo realizó un notable esfuerzo por explicar el testimonio prestado ante un investigador del Fondo del Seguro del Estado al efecto de que después de trasladarle por la mañana al trabajo, Meléndez "se quedaba esperando órdenes", "permanecía a disposición mía", tratando de limitar el alcance de su testimonio al día particular en que ocurrió un accidente del trabajo en el cual Meléndez perdió la vida, estamos satisfechos de que todo el cuadro de la evidencia practicada demuestra que éstas eran las condiciones usuales de su trabajo.

El tribunal a quo formuló determinaciones de hechos similares a las expuestas, pero ignoró elementos de la propia prueba de la parte demandante que deben tomarse en consideración para resolver el litigio. Conviene apuntar que la evidencia ofrecida por la parte querellante fue bastante vaga e imprecisa sobre el aspecto de la labor que realizaba su causante en el espacio de tiempo comprendido entre los viajes del administrador, pero que de todas formas, las in-

ferencias que pueden deducirse aparecen en el resumen esbozado en los párrafos anteriores. ■

La evidencia demuestra que los servicios prestados por Meléndez que hemos descrito se limitaban al tiempo muerto, durante cinco días a la semana, de lunes a viernes, pues el administrador raras veces concurría los sábados a la central. Durante la zafra, el administrador permanecía durante toda la semana en la central, y por tanto no se efectuaban los viajes diarios a que se ha hecho referencia. Siendo ello así, procede eliminar de la reclamación todos los períodos correspondientes a tiempo de zafra y limitar la causa de acción a las horas extras trabajadas durante el tiempo muerto. (³)

La naturaleza de los servicios prestados por Meléndez hace imprescindible que consideremos el aspecto de período de espera (*waiting time*) y su efecto en relación con la reclamación de horas adicionales de labor en exceso de la jornada legal. ■

Las definiciones que contiene la ley sobre jornada de trabajo en Puerto Rico, Ley Núm. 379 de 15 de mayo de 1948, Art. 19, 29 L.P.R.A. sec. 288, arrojan muy poca luz sobre el asunto que consideramos. Así se limita a decir que " 'Contrato de trabajo' significa todo convenio verbal o escrito mediante el cual se obliga al empleado a ejecutar una obra, realizar una labor o prestar un servicio para el patrono por un salario o cualquier otra retribución pecuniaria." El Decreto Mandatorio Núm. 3, 29 R. & R.P.R. secs. 245n-21 a 35, que cubre la industria azucarera tanto en su fase agrícola como industrial, tampoco contiene disposición específica al-

(³) No surge problema alguno de prescripción pues la prestación de servicios por el causante de los querellantes fue continua, sólo que las horas extras fueron trabajadas durante períodos específicos, el tiempo muerto. No debe confundirse tampoco con los empleados de industrias estacionales. *Rodríguez* v. *Eastern Sugar*, 82 D.P.R. 580 (1961); *Piñán* v. *Mayagüez Sugar Co.*, 84 D.P.R. 89 (1961); cfr. *Agostini* v. *Tribunal Superior*, 82 D.P.R. 219 (1961).

guna que pueda sernos de ayuda.(⁴)  Sin embargo, no se discute seriamente que la labor de un empleado no se limita únicamente a la realización de un esfuerzo físico o mental, sino que en determinadas circunstancias, un patrono puede contratar a un empleado para que no realice labor alguna y simplemente permanezca atento al acaecimiento de algún suceso que haga necesaria su actividad, bien por iniciativa propia o por requerimiento del patrono. *Armour & Co.* v. *Wantock*, 323 U.S. 126 (1944) y *Skidmore* v. *Swift & Co.*, 323 U.S. 134 (1944) son los casos normales sobre esta cuestión, y alrededor de ellos se ha elaborado la doctrina para determinar cuándo la espera constituye parte de la jornada de trabajo.  En un hábil juego de palabras que pierde parte de su sabor al traducirse al español, se indicó en *Skidmore* que "Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged" (pág. 137). Aunque no puede establecerse una norma fija para determinar cuándo la espera es compensable, y es necesario considerar las circunstancias de cada caso en conjunto, puede asegurarse que la solución depende en gran medida de: 1) el grado de libertad para dedicarse a actividades personales de que disfruta el empleado durante el período de inactividad en que está sujeto a ser llamado a prestar servicios; 2) el número de horas consecutivas durante las cuales el empleado está sujeto a ser llamado; 3) el beneficio que representa la espera para el patrono o el negocio de éste. *Skidmore* v. *Swift.* 323 U.S. 134 (1944) ; *Armour & Co.* v. *Wantock*, 323 U.S. 126 (1944) ; *Mitchell* v. *Taylor*, 286 F.2d 104 (CA 5, 1960) ; *Handler* v. *Thrasher*, 191 F.2d 120 (CA 10, 1951) ; *Skelly Oil Co.* v. *Jackson*, 148 P.2d 182 (Okla. 1944) ; *Mitchell* v. *Nichol-*

(⁴)En otros decretos promulgados por la Junta de Salario Mínimo se incorpora una definición de "trabajo" o "labor" al efecto de que "incluye, además de servicio o faena, *tiempo de espera* exigido o consentido por el patrono." Véanse, Artículo 1 de los Decretos Núm. 11 (industria de la construcción), 12 (servicio de transporte), 13 (trenes de lavado y limpieza de ropa), 14 (muebles y otros productos de madera) y 15 (canteras), 29 R. & R.P.R. secs. 245n-171, 191, 211, 231 y 251.

**404**

*son*, 179 F. Supp. 292 (W.D. N.C. 1959) ; *Campbell* v. *Jones & Laughlin Steel Corporation*, 70 F. Supp. 996 (W.D. Pa. 1947) ; *Travis* v. *Ray*, 41 F. Supp. 6 (W.D. Ky. 1941) *Walling* v. *Bank of Waynesboro, Ga.*, 61 F. Supp. 384 (S.D. Ga. 1945) ; *Thompson* v. *Daugherty*, 40 F. Supp. 279 (Md. 1941) ; *Mitchell* v. *Wigger*, 39 Labor Cases (1960) 166278; (5) Anotación, *What is considered as working time within contemplation of overtime provisions of Federal Fair Labor Standards Act*, 89 L. ed. 130 (1945) ; 33 Va. L. Rev. 58–60 (1947). (6)

La reglamentación federal promulgada por el Administrador de la Ley de Horas y Salarios, 29 C.F.R. 1949 (Supl. 1962), secs. 785.14–785.17, recoge los principios aplicables elaborados por la interpretación de los tribunales, y después de sentar la regla general de que el tiempo de espera forma parte o no de la jornada de trabajo dependiendo de las circunstancias de cada caso en particular, dice:

"§ 785.15.   *En funciones del empleo.*

Una taquígrafa que lee un libro mientras espera a que le dicten, un mensajero que descifra un crucigrama mientras aguarda por recados, un bombero que juega damas mientras aguarda por alarmas y un trabajador de factoría que departe con sus compañeros mientras espera que la maquinaria sea reparada, están todos trabajando durante esos períodos de inactividad.   La regla también es de aplicación a empleados que trabajan fuera de la planta.   Por ejemplo, el técnico de servicio está trabajando mientras espera que el cliente de su patrono le prepara el equipo que va a reparar.   El tiempo invertido forma parte de la jornada de trabajo aun cuando se

---

(5) No está envuelto en el presente caso ningún problema que tenga tangencia con la Ley de Portal a Portal, 61 Stat. 84, 29 U.S.C. Secs. 251–262.   Véase D'Amico, *"Working Time" and the Portal to Portal Act of 1947*, 9 Fed. B. J. 375 (1948) ; *Fair Labor Standards Under the Portal to Portal Act*, 15 U. Chi. L. Rev. 352 (1948).

(6) Para otros problemas que tienen relación con el asunto discutido, véanse, Anotaciones, *"Rest period, 'coffee break', or similar idle time as work time or as hours worked, within Fair Labor Standards Act*, 61 A.L.R.2d 962 (1958) y *"Sleeping time as work time or as hours worked, within Fair Labor Standards Act"*, 44 A.L.R.2d 870 (1955).

le permita al empleado alejarse del local o del sitio de trabajo durante tales períodos de inactividad. Estos períodos no pueden anticiparse. Casi siempre son de corta duración. De cualquier modo, el empleado no puede usar ese tiempo efectivamente para fines personales. El mismo pertenece y está controlado por el patrono. En todos estos casos la espera forma parte integrante del empleo. Al empleado se le contrata para que espere. [Casos.]

"§ 785.16. *Fuera de las funciones del empleo.*

(a) *En General.* Aquellos períodos durante los cuales un empleado está completamente relevado de su empleo y que son lo suficientemente largos que le permitan usar el tiempo efectivamente para fines personales, no son horas de trabajo. El empleado no está completamente relevado de las funciones de su empleo y no puede usar ese tiempo efectivamente para fines personales, a menos que se le avise con anticipación que puede abandonar el trabajo y que no tendrá que reanudar éste hasta determinada hora. Si el tiempo es lo suficientemente largo para permitirle usarlo efectivamente para fines personales depende de todos los hechos y circunstancias de cada caso en particular.

(b) *Chóferes de camiones; ejemplos específicos.* Un chófer de camión que tiene que esperar en el empleo o cerca de éste hasta que se cargue la mercancía, está trabajando durante el tiempo que dure la operación de carga. Si el chófer llega a su destino y mientras espera el viaje de regreso tiene que cuidar la propiedad de su patrono, también está trabajando mientras espera. En ambos casos se contrata al empleado para que espere. La espera es parte integrante de su empleo. Por otro lado, por ejemplo, si el chófer del camión es enviado desde Washington, D.C. a la ciudad de Nueva York, saliendo a las seis de la mañana y llegando a su destino a las doce del mediodía, relevándosele completa y específicamente de toda obligación hasta las seis de la tarde en que reasume sus funciones para el viaje de regreso, el tiempo de espera no forma parte de la jornada de trabajo. El empleado espera para volver a ser contratado. [Casos.]

"§ 785.17. *Tiempo sujeto a ser llamado (On calltime).*

Un empleado que viene obligado a permanecer en el local del patrono o muy cerca de éste esperando ser llamado, de tal suerte que no puede usar efectivamente ese período para sus fines personales, está trabajando mientras 'espera ser llamado'. Un empleado que no viene obligado a permanecer en el local

del patrono, pero simplemente viene obligado a dejar constancia en su casa o con los funcionarios de la compañía en cuanto a dónde puede ser localizado, no está trabajando mientras espera esa llamada." [Casos.] ■

Aplicados los factores antes mencionados a los hechos del presente caso, forzoso es reconocer que el período de espera del empleado respondía principalmente a propósitos y fines del patrono y para beneficio de éste; que el empleado estaba disponible sujeto a ser llamado en cualquier momento para prestar servicios; que no podía disfrutar para propósitos personales del tiempo en que no estaba dedicado activamente a la prestación de servicios; y en resumen, que la espera formaba parte de su jornada de trabajo.

Procede pues, que se le compensen las cinco horas diarias trabajadas en exceso de la jornada legal durante cinco días a la semana en el tiempo muerto. ■

3—Conforme se resolvió en *Laborde* v. *Eastern Sugar Associates*, 81 D.P.R. 478 (1959), las horas trabajadas en exceso de ocho diarias deben ser compensadas a razón de tipo doble, y para determinar el tipo de horas procede dividir el salario semanal recibido entre cuarenta horas. Ello es así porque conforme resolvimos en el caso citado es necesario aplicar los aspectos más favorables de la legislación federal —jornada de trabajo de 40 horas semanales— y la reglamentación estatal —doble tiempo— según el apartado B-2(a) del Decreto Mandatorio Núm. 3, 29 R. & R.P.R. sec. 245n-28(a). A este respecto es bueno consignar que la prueba nos ha convencido que el causante de los demandantes tenía un salario semanal fijo que varió en distintas épocas, y que las horas trabajadas que se hicieron figurar en el extracto de las nóminas admitidas en evidencia no refleja adecuadamente el contrato de trabajo que en el aspecto de compensación

se convino entre las partes.([7])    Esta apreciación dispone del único error señalado por la sucesión querellante en su recurso de revisión.

*Se modificará la sentencia dictada por el Tribunal Superior, Sala de Bayamón, en 2 de octubre de 1961, de acuerdo con los términos de esta opinión.   La suma concedida para honorarios de abogado se reducirá a $1,000.   Así modificada, se confirmará.*

([7]) Aún cuando la prueba demostró que el empleado trabajó en algunas ocasiones durante el domingo, su día de descanso, procede hacer caso omiso de este aspecto de la reclamación porque no se estableció el número de ocasiones en que ello ocurrió, y además, mediante la aplicación de la regla de "de minimis". *Anderson* v. *Mt. Clemens Pottery Co.,* 328 U.S. 680, 692 (1945); *Bridgeman* v. *Ford Bacon & Davis,* 161 F.2d 962, 965 (CCA 8, 1947).