Sánchez Martínez, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
En ciertas ocasiones, durante el período huelgario de la Puerto Rico Telephone Company en 1998, cuatro supervisores -empleados gerenciales exentos-, permanecieron en las oficinas centrales de la compañía durante las 24 horas del día, pernoctando y haciendo sus comidas en las dependencias de la empresa, disponibles para responder a las situaciones de emergencia. Al principio de la huelga, la PRTC, por voz de los supervisores inmediatos de dichos empleados, les prometió pagar, como horas extras, las 16 horas diarias en exceso a las 8 horas regulares de trabajo. Más tarde, durante el proceso huelgario, sin embargo, la PRTC redujo a únicamente *951 siete horas diarias las horas extraordinarias que dicha entidad estaba dispuesta a pagar. Los trabajadores reclamaron su derecho a la remuneración adicional ante el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Guaynabo, mediante la presentación de una demanda sobre cobro de dinero y cumplimiento específico de contrato, caso D2AC98-0080. El Tribunal de Primera Instancia paralizó los procedimientos ante sí y ordenó que la controversia se dilucidara en el ámbito administrativo.
El caso ante nos es, pues, para todos los efectos, una revisión administrativa sui generis, toda vez que, en lugar de haber pasado por todo el proceso administrativo interno, se origina cuando el Tribunal de Primera Instancia, mediante una orden de 26 de marzo de 1999, remite el caso a la PRTC. 
El 16 de abril de 1999, el Director del Departamento de Asuntos Laborales de la PRTC asignó el caso, bajo el número de queja 99-006, a la consideración de la oficial examinadora, a tenor con lo dispuesto en el Reglamento de Personal para Empleados Gerenciales de la Puerto Rico Telephone Company, de 4 de abril de 1983. La oficial examinadora celebró una vista que se extendió durante varias sesiones, desde el 11 de agosto de 1999 hasta el 10 de mayo de 2000, y a la cual las partes comparecieron acompañadas por sus respectivos abogados.
En la vista declararon, como testigos de la parte querellante, los cuatro supervisores demandantes, y de parte de la PRTC, el Sr. Percy Rier Romero, gerente de la Oficina Central (Metro Este) y supervisor inmediato de los supervisores querellantes, y el Sr. Steven J. Maranville Lorenzo, el director de la Oficina Central y supervisor inmediato del señor Rier. Tras haber presentado ambas partes sendos memorandos de derecho en apoyo de su posición, el 30 de enero de 2001, como dijimos, la oficial examinadora emitió la resolución recurrida, que pasó a ser la resolución oficial de la agencia.
Es de dicha determinación administrativa que recurren ante nos los señores Jorge Rentas Cruz, Héctor Luis Navarro Huertas, Aurelio Martínez Valentín y Rafael Rivera Molina (en adelante, los empleados querellantes), empleados permanentes exentos de la PRTC que ocupan puestos como supervisores en distintas áreas de la compañía relacionadas con el mantenimiento de la planta interna. Nos solicitan que revoquemos la resolución emitida por dicha compañía el 30 de enero de 2001, mediante la cual denegó la petición de pago adicional instada por ellos, para que se les compensara, como dijimos, por las 16 horas trabajadas en exceso de las ocho horas regulares de trabajo, los días en que dichos empleados permanecieron en el lugar de trabajo las 24 horas del día.
Los empleados querellantes alegan que erró la oficial administrativa que presidió la vista: (1) al desestimar la reclamación y emitir la resolución recurrida, ya que la misma no está sostenida por la prueba presentada en la referida vista, es irrazonable y caprichosa, y (2) al no contener dicha resolución determinaciones de hechos y conclusiones de derecho, conforme lo requieren la ley y la jurisprudencia.
Con el beneficio de la comparecencia de la PRTC, y tras haber elevado el expediente administrativo y la transcripción de las vistas celebradas, estamos en posición de resolver. Como veremos a continuación, tienen razón los empleados querellantes.
I
Reiteradamente, ha indicado el Tribunal Supremo que las determinaciones de los organismos administrativos especializados merecen gran deferencia y respeto. Mun. de San Juan v. J.C.A., 152 D.P.R._(2000), 2000 J.T. S. 193; Misión Ind. P.R. v. J.C.A., 145 D.P.R._(1998), 98 J.T.S. 77. Normalmente, los tribunales tenemos la obligación de guardar la más profunda deferencia a las agencias administrativas en los asuntos sobre los cuales dichas agencias tienen vasta y profunda experiencia y conocimiento. Fuertes y otros v. A.R.P.E., 134 D.P.R. 947 (1993). Esa deferencia, sin embargo, no implica que los tribunales renunciemos a nuestra función revisora, Del Rey v. J.A.C.L., 107 D.P.R. 348, 355 (1978), sobre todo si se trata de un aspecto que no está relacionado con el conocimiento especializado de la agencia o si la agencia administrativa cometió un error en la aplicación de la ley. Miranda v. C.E.E., 141 D.P.R. 775 (1996); Fuertes y otros v. A.R.P.E., supra. Después de todo, según la See. 4.5 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), Ley 170 de 12 de agosto de 1988, según *952 enmendada, 3 L.P.R.A. see. 2175, las conclusiones de derecho de la agencia son revisables en toda su extensión.
Para comenzar, antes de analizar a fondo el derecho aplicable, debemos examinar un aspecto que, aunque no fue señalado directamente como error, es crucial en el caso de autos. Después de todo, los tribunales apelativos tenemos la obligación de analizar los errores, aun si éstos no han sido señalados por las partes. Véanse, Vega v. Yiyi Motors, Inc., 146 D.P.R._(1998), 98 J.T.S. 97; Hernández v. Espinosa, 145 D.P.R._(1998), 98 J.T.S. 41; López Vicil v. I.T.T. Intermedia, Inc., 142 D.P.R. 857 (1997); Ríos Quiñones v. Adm. Servs. Agrícolas, 140 D. P.R. 868 (1996).
En la resolución recurrida, la oficial examinadora, una abogada independiente contratada por la PRTC para entender en el caso, indica, en un momento dado, lo siguiente:

"Desafortunadamente, la representación legal de los querellantes no presentó en su Memorando de Derecho planteamientos legales serios que sustentaran su posición. Se limitaron a esbozar principios generales del derecho que son de aplicación y para el beneficio de [la] misma forma a ambas partes en este caso.

Por lo tanto, aunque reconocemos el mérito de la reclamación de los querellantes en la presente situación de hechos, no se ha planteado fundamento jurídico de suficiente peso para que dentro del balance de intereses que tenemos que considerar, poder decidir a su favor. Es por esto que declaramos sin lugar la solicitud de los querellantes de que se les pague por las ocho horas de descanso. Esto no significa que cada uno de ellos [no] pueda solicitar el pago de horas trabajadas durante su tiempo de descanso. ”

Resolución recurrida, a la pág. 3 del apéndice de los querellantes.
En otras palabras, la oficial examinadora consideró que, al no presentar la representación legal de los querellantes argumentos que ella considerara suficientes en derecho, ella no estaba obligada a proveer el remedio adecuado, a pesar de que entendía que la reclamación presentada tenía mérito. Con esa actitud, erró dicha funcionaría. Veamos.
Sabido es que los tribunales deben conceder lo que en derecho proceda, aunque no sea solicitado. Regla 43.6 de Procedimiento Civil, 32 LPRA Ap. III, R. 43.6; Soto López v. Colón, 143 D.P.R. 282 (1997); Dávila v. Valdejulli, 84 D.P.R. 101 (1961); Piovanetti v. Vivaldi, 80 D.P.R. 108 (1957). Y es norma claramente establecida que en derecho administrativo, nada impide que las agencias, en los casos apropiados, apliquen las Reglas de Procedimiento Civil, 32 LPRA Ap. III. Si bien los procedimientos ante una agencia administrativa se rigen, en primer lugar, por las disposiciones de la ley o la reglamentación aplicable, las referidas reglas pueden utilizarse como fuente supletoria, sobre todo, cuando éstas sirvan para propiciar la solución justa de la controversia. Berrios v. Comisión de Minería, 102 D.P.R. 228 (1974). Véanse, además, Romero Santiago v. F.S.E., 125 D.P.R. 596 (1990); Santiago Dávila v. F.S.E., 113 D.P.R. 627 (1982).
Es de notar que en la revisión que nos ocupa, el Art. 6 del Reglamento para Regir en los Procedimientos Adjudicativos ante Oficiales Examinadores de la PRTC, Reglamento 4968, excluye, específicamente, las Reglas de Procedimiento Civil relativas al descubrimiento de prueba. Dicho reglamento no excluye, sin embargo, la aplicación de las restantes Reglas de Procedimiento Civil.
Nada dispone al respecto, tampoco, el otro reglamento aplicable, el Reglamento de Personal para Empleados Gerenciales de la Puerto Rico Telephone Company, supra.
De otro lado, el Art. II del citado Reglamento para Regir en los Procedimientos Adjudicativos ante Oficiales Examinadores, supra, dispone que el mismo se interpretará de modo que se garanticen los derechos constitucionales y estatutarios de los empleados y una solución justa, rápida y económica de todo procedimiento. Una disposición análoga se incluye en el Reglamento de Personal para Empleados Gerenciales, supra, que, en el Art. 12, Procedimiento para atender quejas del personal gerencial, dispone, en la Sec. 12.1 que se adopta dicho *953 procedimiento para considerar efectiva y rápidamente cualquier queja de un empleado gerencial.
En conclusión, la oficial examinadora tenía la obligación de aplicar el principio estatuido en la Regla 43.6 de Procedimiento Civil, supra, y conceder lo que en derecho procediera, aunque no hubiese sido solicitado. En otras palabras, no sólo se cometió el error señalado por los supervisores querellantes, de no incluir verdaderas conclusiones de derecho en la resolución recurrida, sino que, en realidad, la oficial examinadora, amparándose en que las partes no la habían ilustrado sobre el derecho aplicable, no analizó las normas de derecho correspondientes. Después de todo, como veremos a continuación, ello le hubiera permitido llegar a una solución justa y económica en el caso de autos. Berrios v. Comisión de Minería, supra.
II
No hay ninguna duda de que los cuatro empleados querellantes, como empleados gerenciales exentos, normalmente, no tienen derecho a remuneración por horas trabajadas en exceso de las ocho horas regulares diarias. Véase, la Ley Federal de Normas Razonables del Trabajo (Fair Labor Standards Act), 29 U.S.C. secs. 201 y ss.
Tampoco hay ninguna duda de que la Compañía tiene, entre otros planes de contingencia, un plan específico para situaciones obrero-patronales y de que, de acuerdo con el mismo, los empleados gerenciales exentos están obligados, como parte de sus funciones, a reportarse a trabajar en situaciones huelgarias, bajo riesgo de ser disciplinados de no hacerlo. Eso tampoco está en controversia. De hecho, los empleados querellantes admiten, indirectamente, en sus testimonios que, aunque nó se les hubiera prometido remuneración adicional, hubieran trabajado durante el período huelgario, como parte de sus deberes.
La PRTC, sin embargo, ha adoptado una denominada práctica -el Procedimiento Departamental PFI-011 (Compensación Suplementaria para el Personal Exento)- que permite, mediante una autorización previa solicitada en conformidad con el procedimiento establecido en la referida práctica, pagar horas extras a empleados exentos. Dicha práctica es utilizada durante el curso normal del año, como una manera de compensar a los empleados exentos por el tiempo adicional trabajado en situaciones que exigen trabajar en exceso de las horas reglamentarias, casi siempre en proyectos especiales que se han podido programar, y para los cuales, los gerentes de cada área pueden prever la fuerza laboral que necesitan y el tiempo que conlleva, obtienen la aprobación previa necesaria, y luego, administran y distribuyen las horas adicionales ya aprobadas. 
El 1 de julio de 1998, en medio del proceso huelgario, la entonces presidenta de la PRTC, Sra. Carmen Ana Culpeper, publicó una comunicación, cuyo texto, en papel timbrado de la Oficina de la Presidenta, es el siguiente:
"i de julio de 1998

Vicepresidente Ejecutivo

Vicepresidentes Seniors

Vicepresidentes

Vicepresidentes Auxiliares

Carmen Ana Culpeper

Como consecuencia de la situación actual por la cual atraviesa la Puerto Rico Telephone Company, asociada con la huelga decretada por la Unión Independiente de Empleados Telefónicos (UlET) y la Hermandad Independiente de Empleados Telefónicos (HIETEL), nuestro personal gerencial exento ha trabajado tiempo adicional a la jomada regular de trabajo. Con gran esfuerzo, sacrificio y dedicación, han mantenido en operación uno de los servicios necesarios y de beneficio para nuestro pueblo, el servicio telefónico.

Conforme con lo anterior y en recompensa por la ardua labor realizada por este personal, demostrando una 
*954
vez más su compromiso para con la empresa y, por ende, con el pueblo de Puerto Rico, autorizamos que se le compense el tiempo adicional hasta un máximo de siete (7) horas diarias. El Procedimiento Especial PFI-011 (Compensación Suplementaria para el Personal Exento), será de aplicabilidad durante el período que dure la huelga, tomando en consideración la excepción antes mencionada.

La excepción arriba indicada no se limitará a siete (7) horas en aquellas áreas en las cuales se haya requerido al personal exento laborar en forma continua, tales como las responsables de la protección y restablecimiento de la planta. El tiempo adicional en que incurra este personal deberá ser evaluado por el Director y Vicepresidente del área concernida y[,J de ser aprobado, deberá ser sometido a mi atención para la autorización final."

Memorando de la Presidenta, de 1 de julio de 1998.
El memorando tiene indicado, en manuscrito, que el mismo debe ser circulado, igualmente, a los directores de grupo, directores y, entre otros nombres específicos, el de Steven Maranville. No se incluye ni a los gerentes ni a los empleados exentos, entre las personas a quienes se circularía el memorando.
Si analizamos la referida comunicación, podemos concluir que la misma establece dos procedimientos. El primero autoriza el pago hasta de 7 horas extras adicionales, mediante un procedimiento análogo al establecido por la . práctica PFI-011, como una excepción a la misma. El segundo método autoriza una variante a esa excepción, permitiendo pagar en exceso de las siete horas arriba mencionadas, en aquellas áreas en que se haya requerido al personal exento laborar en forma continua, tales como las responsables de la protección y restablecimiento de la planta. En ese caso, el procedimiento requiere la evaluación por las siguientes personas: (1) el Director del área concernida, (2) el Vicepresidente del área en cuestión y, (3) de ser aprobado, deberá ser sometido a la atención de la Presidenta.
En el caso de autos, una vez concluido el proceso huelgario, los supervisores querellantes completaron el formulario requerido para solicitar el pago de las horas extras -no sólo de las ocasiones en que permanecieron las 24 horas en las dependencias de la PRTC, sino de las horas extras trabajadas los días en que sí podían acudir a sus casas. El señor Rier, gerente de la Oficina Central y supervisor inmediato de ellos, firmó los referidos formularios, autorizando así la compensación adicional, y los remitió al señor Maranville, quien también los firmó y autorizó. Es decir, las dos primeras aprobaciones requeridas por el procedimiento que establecen la PFI-011 y el memorando del 1 de julio de 1998 se satisficieron. Sin embargo, el proceso se detuvo cuando se sometieron los formularios en cuestión al Vicepresidente a cargo del área. De la transcripción de la vista, no se deduce claramente qué ocurrió con los referidos formularios. El señor Maranville declaró que los firmó, concediendo así su aprobación, incluso aún después de tener conocimiento del 1 de julio de 1998, por lo que reconoció que, a su entender, dichos empleados ameritaban la compensación adicional autorizada por el memorando de la Presidenta.
De acuerdo a lo declarado por el señor Maranville, no obstante, dichos formularios no salieron nunca de su oficina. Es decir, nunca pasaron, abiertamente, al próximo paso, la aprobación del vicepresidente a cargo del área. Fueron devueltos a los supervisores querellantes -al igual que a los otros supervisores que también los habían completado, pero que renunciaron posteriormente a la reclamación- con instrucciones verbales para que los modificaran y limitaran el pago solicitado a un máximo de siete horas diarias.
Para todos los efectos prácticos, lo que hizo la PRTC, sin declararlo abiertamente, fue denegar de facto, la compensación adicional solicitada por el período en que los supervisores querellantes permanecieron las 24 horas en su trabajo. Al así hacerlo, la PRTC actuó contrario a la doctrina habitual en este tipo de caso.
Al examinar la jurisprudencia norteamericana en búsqueda de dirección sobre el tema, dado el hecho de que la legislación que cobija la reclamación en el caso de autos es la citada Ley Federal de Normas Razonables del Trabajo, supra, identificamos un caso cuyos hechos son muy similares al nuestro: Campbell v. Jones & Laughlin Steel Corp., 70 F.Supp. 996 (W.D.Pa. 1947). En Campbell, durante una huelga, una compañía fabricante de acero *955 solicitó a los guardias de seguridad que empleaba que permanecieran dentro de las dependencias durante las 24 horas del día. Los guardias trabajaban un tumo de 8 horas y descansaban el próximo, en ciclos continuos, resultando que, en un día, trabajaban 16 horas y descansaban 8 y, en el siguiente, trabajaban 8 y descansaban 16. Los períodos de descanso se podían interrumpir, no obstante, en cualquier momento, aunque, en efecto, fueron pocas las ocasiones en que se interrumpieron. El patrono les proveía alimentos y un lugar donde dormir. En los períodos de descanso tenían actividades diversas: jugaban juegos de mesa, escuchaban radio y una o dos veces por semana les proyectaban películas. Pero no podían abandonar la fábrica a voluntad.
Al principio del período huelgario se les informó que se les pagarían las 24 horas, el modo en que se había pagado durante una huelga anterior, y así se les pagó los primeros dos días de huelga. Por alguna razón, más tarde en el proceso, se redujo el pago a ocho horas regulares, más 8 horas de tiempo extra. Los guardias instaron una acción legal para solicitar la compensación adicional, a base de la Ley Federal de Normas Razonables del Trabajo, supra.
El Tribunal de Distrito federal concluyó que los guardias tenían derecho a compensación por las 24 horas. Después de todo “the entire twenty four hours... was spent by the plaintifs for the benefit of the defendants”. Campbell, a la pág. 997. Fundamentó su decisión en decisiones previas del Tribunal Supremo de Estrados Unidos en la que éste había indicado la importancia de examinar las circunstancias de cada caso, pues nada en la referida ley ni en los precedentes judiciales impedía que se pudiera considerar el tiempo de espera como tiempo trabajado. Véanse, Skidmore v. Swift and Co., 323 U.S. 134 (1944); Armour & Co. v. Wanbtock, 323 U.S. 126 (1944). En cada caso deben examinarse los términos del contrato entre el patrono y su empleado, la naturaleza del servicio, el tipo de espacio o habitación que se provee para vivir y dormir y las demás circunstancias pertinentes, con el fin de. determinar si el período por el cual se solicita compensación adicional se utilizó primordialmente para el beneficio del patrono o de los empleados. Véase, además, Beaston v. Scotland School for Veterans’ Children, 693 F.Supp. 234 (M.D.Pa. 1988).
El Tribunal Supremo de Puerto Rico ha examinado en distintas ocasiones controversias relacionadas con la de autos. En Sucn Meléndez v. Central San Vicente, 86 D.P.R. 398 (1962), se trataba de los miembros de la sucesión de un empleado fallecido que habían reclamado la compensación por las horas extras trabajadas por su causante, chofer de un administrador de central, mientras esperaba (waiting time) a recibir órdenes para el próximo viaje. El Tribunal Supremo, al enunciar la norma vigente en esa jurisdicción, se basó mayormente en la jurisprudencia norteamericana sobre el tema y tras no encontrar en la legislación local disposiciones específicas sobre el tema, resolvió.

“Aunque no puede establecerse una norma fija para determinar cuándo la espera es compensable, y es necesario considerar las circunstancias de cada caso en conjunto, puede asegurarse que la solución depende en gran medida de: (1) el grado de libertad para dedicarse a actividades personales de que disfruta el empleado durante el período de inactividad en que está sujeto a ser llamado a prestar servicios; (2) el número de horas consecutivas durante las cuales el empleado está sujeto a ser llamado; (3) el beneficio que representa la espera para el patrono o el negocio de éste. ”

Sucn Meléndez, a la pág. 403.
Si examinamos el caso de autos a base de dichos criterios, corroboramos que: (1) los supervisores querellantes no tenían prácticamente ninguna libertad para dedicarse a actividades personales durante el período de inactividad, pues estaban obligados a permanecer en el edificio del patrono; (2) el número de horas consecutivas durante las cuales el empleado estaba sujeto a ser llamado y tenía que responder a una situación de emergencia, era cualquier momento durante las supuestas 16 horas adicionales a las ocho horas de trabajo regulares; y (3) para la PRTC, el tener a dichos empleados disponibles las 24 horas del día significaba asegurar la continuidad del servicio y prevalecer, en gran medida, sobre los empleados en huelga, -es decir, el beneficio que representaba ese período de espera era totalmente para el patrono y para el negocio de éste.
*956 Si analizamos, además, los otros criterios de la jurisprudencia norteamericana, tales como los términos del contrato entre patrono y empleado, la naturaleza del servicio, el tipo de espacio o habitación que se provee para vivir y dormir, entre otros, el resultado es similar.
En el caso de autos, los empleados tuvieron que llevarse sus pertenencias desde los días anteriores a la huelga, para estar preparados, y tuvieron que pernoctar en condiciones precarias, en las mismas áreas de trabajo. Aunque tenían tiempo para alimentarse, descansar y recrearse, no tenían ninguna libertad para abandonar el lugar. Estaban, para todos los efectos, cautivos en sus oficinas.
En términos del tipo de relación contractual entre patrono y empleado, el memorando del 1 de julio de 1998 constituyó, para todos los efectos, una alteración al contrato de trabajo entre la PRTC y los empleados querellantes.
Analizando el otro aspecto, el de la naturaleza del servicio, se deduce, de acuerdo a lo declarado por los supervisores querellantes en la vista, que ellos forman parte, a la larga, de la planta interna, los encargados de mantener, en materia de conexión de la red, un elemento esencial para que la red telefónica trabaje.
Como hemos visto, la jurisprudencia considera que períodos como los del caso de autos, durante los cuales el empleado puede incluso dormir, pero durante los cuales se les puede interrumpir su sueño para que realicen alguna tarea y, sobre todo, durante los cuales no pueden abandonar el lugar, constituyen tiempo trabajado. Sobre todo cuando, como en el caso de autos, dicho período de trabajo es en beneficio del patrono y no del empleado.
Distintas serían las circunstancias durante períodos normales en los que no hay huelga, durante el cual los supervisores en cuestión, como parte de las funciones de su trabajo, estando libres, pueden ser llamados a resolver alguna situación de emergencia en la PRTC. Aunque éstos tengan la obligación de responder a alguna llamada de la compañía, son libres de desplazarse y llevar a cabo sus actividades normales. Véanse, e.g., López Figueroa v. Valdés, 94 D.P.R. 238 (1967); Deyá v. Otis Elevator Co., 91 D.P.R. 669 (1965). Dichos empleados no se encuentran trabajando bajo la Ley Federal de Horas y Salarios, supra. López Figueroa v. Valdés, supra. De otro lado, la jurisprudencia puertorriqueña ha destacado la metodología de interpretación liberal de la legislación laboral a favor del obrero o empleado. Véanse, Muñoz Hernández v. Policía de P.R., 134 D.P.R. 486, 496 (1993), y los casos allí citados.
En conclusión, la oficial examinadora -y por lo tanto, la PRTC-, incurrió en los dos errores señalados por los supervisores querellantes.
III
Con estos antecendentes, se revoca la resolución recurrida y se ordena a la PRTC pagar a los supervisores querellantes las horas extras reclamadas durante los días en que pernoctaron en las dependencias de la PRTC durante el período huelgario.
Lo acordó y manda el Tribunal y lo certifica la señora Secretaria del Tribunal de Circuito de Apelaciones.
Aida Ileana Oquendo Graulau
Secretaria del Tribunal del Circuito de Apelaciones
ESCOLIOS 2002 DTA 50
1. En ese sentido, en el apéndice del caso de autos se sustituye la copia de la querella, normalmente requerida en los casos de revisiones administrativas, a tenor con lo dispuesto por la Regla 59 (E) del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A, R. 59 (E), por una copia de la demanda.
2. El referido reglamento fue adoptado por la PRTC a raíz de una decisión del Tribunal Supremo de Puerto Rico en Torres *957 Ponce v. Jiménez, 113 D.P.R. 58 (1982), en el cual dicho foro determinó que el principio del mérito aplicaba a la entonces existente Autoridad de Teléfonos y a su subsidiaria, la PRTC, por la naturaleza público-privada de esta última. Es preciso notar, además, que, a la fecha de los hechos que nos ocupan, la PRTC era una corporación pública, propiedad del Estado Libre Asociado de Puerto Rico. La ley que autorizó la venta de la PRTC es la Ley 54 de 4 de agosto de 1997, 27 L.P.R.A. sees. 431 y ss. Dicha venta se efectuó el 2 de marzo de 1999.
3. También excluye, en el Art. 10, inciso (F), la aplicación específica de las Reglas de Evidencia, aunque dispone que los principios fundamentales de evidencia podrán ser aplicados.
4. De acuerdo al testimonio vertido en las vistas, durante las situaciones normales de trabajo, las horas adicionales que tiene que trabajar el personal exento, en casos de emergencia cuando no se ha podido solicitar previamente la autorización mediante la práctica PFI-011, muchas veces se compensa, extraoficialmente, mediante tiempo compensatorio.
5. La huelga comenzó el 18 de junio de 1998 y concluyó el 29 de julio de 1998.
6. Estas últimas no están en controversia.